1

2

3

4

5

6

7

8                   UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10                          ----oo0oo----

11

12    JESUS SILVA RODRIGUEZ and          No. 2:16-cv-2523 WBS DMC
      RIGOBERTO ZEPEDA LOA,
13
                 Plaintiffs,
14                                        MEMORANDUM RE: JOINT MOTION
         v.                               FOR APPROVAL OF SETTLEMENT
15                                        AND ENTRY OF STIPULATED
      RCO REFORESTING, INC. and           JUDGMENT
16    ROBERTO OCHOA,

17               Defendants.

18

19                          ----oo0oo----

20         Plaintiffs Jesus Rodriguez and Rigoberto Loa brought

21    this action against defendants RCO Reforesting, Inc. ("RCO") and

22    Roberto Ochoa, asserting various wage and hour and employment law

23    claims under federal and state law.  (Second Am. Compl. ("SAC")

24    (Docket No. 39).)  Before the court is the parties' Joint Motion

25    for Approval of Settlement and Entry of Stipulated Judgment.

26    (Docket No. 86.)

27

28

I.    Factual and Procedural Background

        Defendants employed plaintiffs as temporary forestry
workers pursuant to the H-2B visa program.  (SAC ¶ 1.)
Plaintiffs allege that defendants had a policy of not paying
plaintiffs for overtime work and not reimbursing plaintiffs for
their travel and visa costs, which reduced their pay to below
minimum wage.  (Id. ¶¶ 1, 23-26, 60.)  Plaintiffs further allege
that defendants failed to provide plaintiffs with legally
mandated meal and rest periods, itemized wage statements, and
reimbursements for necessary protective gear.  (Id. ¶¶ 1, 16, 27,
29, 73-76, 141.)  These practices allegedly violate the Fair
Labor Standards Act ("FLSA"), 29 U.S.C. § 216 et seq., the
Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"),
29 U.S.C. § 1801 et seq., and various provisions of California
law.

        Plaintiff filed their original complaint on October 22,
2016.  (Compl. (Docket No. 1).)  After the court granted
Rodriguez's motion to amend his complaint to add Loa (Docket No.
22), plaintiffs filed their first amended complaint on April 17,
2017.  (First Am. Compl. (Docket No. 24).)  Shortly thereafter,
plaintiff filed a motion to conditionally certify a FLSA
collective action and provide notice to potential opt-in
plaintiffs.  (Docket No. 33.)  After the court denied plaintiffs'
initial motion without prejudice (Docket No. 31), plaintiffs
filed another motion to certify a FLSA collective action (Docket
No. 33) and the court granted that subsequent motion (Docket No.
42).  The court ordered defendants to produce the contact
information of all potential class members, approved an opt-in

2

period of six months, and authorized notice to all prospective

class members.[1]  (Docket No. 45.)  By this time, plaintiffs,

pursuant to a joint stipulation, filed their second amended

complaint, adding a cause of action under the Private Attorneys

General Act ("PAGA") of 2004, California Labor Code § 2698, et

seq.  Since then, both parties engaged in discovery and agreed to

mediate their dispute before a magistrate judge of this court.

The parties took part in six different settlement conferences,

ultimately reaching a settlement on November 13, 2018.  (Docket

Nos. 84 & 85.)

          The settlement agreement provides that judgment shall

be entered in favor of plaintiffs and against defendants in the

amount of $500,000.  ([Proposed] Stipulated J. and Order

("Agreement"), Statement by the Parties ¶ J (Docket No. 91).)

The judgment would be allocated in the following manner:

$24,553.25 payable to plaintiff Rodriguez to settle his

individual claims; $84,816.50 payable to plaintiff Loa to settle

his individual claims; $313,943.27 representing underpaid wages

payable to absent aggrieved employees; $36,056.73 representing

penalties pursuant to the PAGA, $27,042.40 of which payable to

the California Labor Workforce Development Agency ("LWDA") and

$9,014.33 of which payable to the absent aggrieved employees; and

$40,630.25 representing attorneys' fees and costs payable to

plaintiffs' counsel.  (Id.)  Defendants would pay $20,000 within

---

    [1]    Plaintiffs maintain that "no workers other than
plaintiffs have opted into the action."  (Decl. of Cynthia L.
Rice ("Rice Settlement Decl.") ¶ 4 (Docket No. 86-3).)
Therefore, other employees retain the right to bring their own
FLSA claims if they so choose.  See 29 U.S.C. § 216(b).

180 days after approval of the settlement and $500 per month

commencing no later than ten days after approval of the

settlement.  (Id. ¶ K.)  If defendants fail to make three or more

payments or have significant improvement in their financial

situation, the monetary amount of the judgment increases at most

to $1,000,000.  (See id.)  As part of the settlement, the parties

propose a distribution plan whereby plaintiffs' counsel would

provide notice and distribute payments to the absent aggrieved

employees, including those located in Mexico.  (Agreement,

Judgment and Order Section B ¶ 4; Distribution Plan (Docket No.

91-1).)

The proposed stipulated judgment also includes

injunctive relief.  Defendants and their agents would be

permanently enjoined and restrained from violating the FLSA, the

AWPA, and any applicable California labor law or regulation.

(Agreement, Judgment and Order Section A.)  Defendants would be

required to pay their employees for all compensable time worked,

comply with relevant overtime pay requirements, cover the cost of

business expenses, provide employees with meal and rest breaks,

maintain appropriate records of their employees' wages, pay for

their employees' visa expenses and travel costs, provide adequate

water and sanitation, and agree not to request or demand any

person pay back money due under the judgment.  (Agreement,

Judgment and Order Section A ¶¶ 1-8.)  The injunctive relief

would cover all H-2B workers employed by defendants for the

performance of forestry and reforesting services.

1    II.   Discussion

2          A.   FLSA Settlement

3                "Although the Ninth Circuit has not established a

4    standard for district courts to follow when evaluating an FLSA

5    settlement, California district courts frequently apply the

6    standard established by the Eleventh Circuit in Lynn's Food

7    Stores, Inc. v. U.S. By and Through U.S. Dep't of Labor, 679 F.2d

8    1350, 1352 (11th Cir. 1982)."  Thompson v. Costco Wholesale

9    Corp., No. 14-cv-2778 CAB WVG, 2017 WL 697895, at *6 (S.D. Cal.

10   Feb. 22, 2017).  Under this standard, plaintiffs may settle and

11   release their claims against their employer or putative employer

12   if the parties obtain court approval of the proposed settlement

13   and if the settlement constitutes "a fair and reasonable

14   resolution of a bona fide dispute over FLSA provisions."  29

15   U.S.C. § 216(b); Lynn's Food Stores, 679 F.2d at 1355.  Court

16   approval is necessary to ensure an employee does not waive

17   statutory rights due to an employer overreaching in a non-

18   adversarial context.  Lynn's Food Stores, 679 F.2d at 1354.

19                "A bona fide dispute exists when there are legitimate

20   questions about the existence and extent of Defendant's FLSA

21   liability."  Seguin v. County of Tulare, No. 16-cv-1262 DAD SAB,

22   2018 WL 1919823, at *2 (E.D. Cal. Apr. 24, 2018).  Here, although

23   the parties have reached a settlement, significant disagreement

24   remains.  For instance, the parties dispute whether defendants'

25   employees regularly worked more than 40 hours per week, resulting

26   in minimum wage and overtime violations.  (See Mem. in Supp. of

27   Joint Mot. for Approval of Settlement and Entry of Stipulated J.

28   at 7 (Docket No. 86-2).)  Even though defendants do not deny

                                    5

1 liability under the FLSA outright, disagreements regarding the

2 scope of liability are sufficient to create a bona fide dispute.

3 See Seguin, 2018 WL 1919823, at *2-3 (finding the same).

4 This court uses a "totality of circumstances approach

5 that emphasizes the context of the case and the unique importance

6 of the substantive labor rights involved" to determine whether a

7 settlement under the FLSA is fair and reasonable. See Guinn v.

8 Sugar Transp. of the Nw., Inc., No. 2:16-CV-00325 WBS EFB, 2018

9 WL 5793432, at *2 (E.D. Cal. Nov. 2, 2018) (quoting Selk v.

10 Pioneers Mem'l Healthcare Dist., 159 F. Supp. 3d 1164, 1173 (S.D.

11 Cal. 2016)). A settlement that reflects "a fair and reasonable

12 compromise of issues that are actually in dispute may be approved

13 to promote the efficiency of encouraging settlement of

14 litigation." Wagner v. Cty. of Inyo, No. 1:17-CV-00969 DAD JLT,

15 2018 WL 3203116, at *3 (E.D. Cal. June 28, 2018) (citations

16 omitted). The court finds that this settlement is fair and

17 reasonable for multiple reasons.

18 First, the settlement reflects an actual compromise.

19 Even though the total settlement amount is greater than the total

20 possibly recovery under the FLSA, the settlement also resolves

21 plaintiffs' claims under California law. Moreover, the

22 settlement significantly extends the payout period to accommodate

23 defendants' financial condition. (See Rice Settlement Decl. ¶

24 11.) Plaintiffs might not be able to recover otherwise because

25 defendants have indicated an intention to file for bankruptcy

26 absent these specific payment terms. (Id.) The court also gives

27 considerable weight to plaintiffs' counsel's conclusion that

28 "this settlement is reasonable and represents the best chance we

have of recovering money" (id.) given her involvement with the litigation and extensive experience with similar cases. See Guinn, 2018 WL 5793432, at *2 (giving counsel the same deference). Finally, the settlement helps plaintiffs avoid the uncertainty of recovery at trial, further indicating that it is a legitimate compromise. See Selk, 159 F. Supp. 3d at 1175.

Second, parties entered into this agreement after conducting discovery and adequately investigating the claims. (See Decl. of Benjamin R. Botts ("Botts Decl.") ¶ 3 (Docket No. 86-11).) Plaintiffs' counsel maintains that they took three depositions and were preparing to file a motion for partial summary judgment. (See Mem. in Supp. of Joint Mot. for Approval of Settlement and Entry of Stipulated J. at 8.) Settlements that take place after counsel is given the opportunity to review documents, investigate, and estimate the value of the claims are typically considered fair and reasonable. See Ontiveros v. Zamora, 303 F.R.D. 356, 371 (E.D. Cal. 2014) (Shubb, J.).

Third, and finally, the parties reached the settlement through arm's length negotiations, facilitated by an impartial mediator. There is a low probability of fraud or collusion because a magistrate judge of this court oversaw six different settlement conferences between the parties. See Beidleman v. City of Modesto, No. 1:16-CV-01100 DAD SKO, 2018 WL 1305713, at *5 (E.D. Cal. Mar. 13, 2018) (reaching a similar conclusion). These conferences also indicate that the parties carefully investigated their claims by considering a neutral opinion in evaluating the strength of their arguments. See Ontiveros, 303 F.R.D. at 371.

7

Given these findings, the court concludes that the settlement reached is a fair and reasonable resolution of bona fide disputes. Accordingly, the court approves of the parties' settlement of plaintiffs' FLSA claims.

B. PAGA Settlement

"[A] PAGA action is a statutory action in which the penalties available are measured by the number of Labor Code violations committed by the employer." Sakkab v. Luxottica Retail N. Am., Inc., 803 F.3d 425, 435 (9th Cir. 2015). The employees bringing the action do so as agents or proxies of the state's labor law enforcement agencies. Id. Any agreement to waive PAGA claims is an agreement to limit the penalties plaintiff-employees may recover on behalf of the state.[2] Id. at 436. Because a settlement of PAGA claims settles claims that could otherwise be brought by the state, the trial court must "review and approve" any settlement of PAGA claims. Cal. Lab. Code § 2699(l)(2).

Before the trial court can review and approve of any settlement of PAGA claims, "[t]he proposed settlement shall be submitted to the [LWDA] at the same time that it is submitted to the court." Id. Consistent with this court's order on December 21, 2018 (Docket No. 87), the parties transmitted a copy of their

---

[2] While plaintiff-employees may obtain penalties for violations committed against absent employees, there is no need to protect the absent employees' due process rights when settling PAGA claims because the PAGA does not give absent employees any substantive right to bring their own claims. See id. at 435-36. This is the case even though a PAGA action "binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government." Arias v. Superior Court, 46 Cal. 4th 969, 986 (2009).

Joint Motion for Approval of Settlement and Entry of Stipulated

Judgment to the LWDA (Decl. of Cynthia L. Rice ¶ 2 (Docket No.

89)).[3]  The trial court, in reviewing the award of civil

penalties under the PAGA, may exercise its discretion to lower

the amount of penalties awarded if "to do otherwise would result

in an award that is unjust, arbitrary and oppressive, or

confiscatory."  Cal. Lab. Code § 2699(e)(2).  Because state law

enforcement agencies are the real parties in interest, the

court's task is to ensure that the state's interest in enforcing

the law is upheld.  Sakkab, 803 F.3d at 435.

        Other than the provisions previously discussed, "[the]

PAGA does not establish a standard for evaluating PAGA

settlements."  See Smith v. H.F.D. No. 55, Inc., No. 2:15-CV-

01293 KJM KJN, 2018 WL 1899912, at *2 (E.D. Cal. Apr. 20, 2018).

The LWDA itself has stated that it is not aware of any existing

case law definitively establishing a standard to review PAGA

settlements.  Id. (citing Ramirez v. Benito Valley Farms, LLC,

No. 16-CV-04708-LHK, 2017 WL 3670794, at *3 (N.D. Cal. Aug. 25,

2017)).  At least a few district courts have applied the factors

in Hanlon v. Chrysler Corporation, 150 F.3d 1011, 1026 (9th Cir.

1998), to evaluate a PAGA settlement.  See, e.g., Smith, 2018 WL

1899912, at *2; Ramirez, 2017 WL 3670794, at *3; O'Connor v. Uber

Techs., 201 F. Supp. 3d. 1110, 1134 (N.D. Cal. 2016).  The Hanlon

factors, which are traditionally used to evaluate class action

settlements, include (1) the strength of plaintiffs' case; (2)

the risk, expense, complexity, and likely duration of further

---

        [3]    There is no submission from the LWDA on the court's
docket reflecting a position on this settlement.

litigation; (3) the risk of maintaining class action status
throughout the trial; (4) the amount offered in settlement; (5)
the extent of discovery completed; (6) the expertise and views of
counsel; (7) the presence of government participation; and (8)
the reaction of class members to the proposed settlement.  See
Hanlon, 150 F.3d at 1026.  "Many of these factors are not unique
to class action lawsuits and bear on whether a settlement is fair
and has been reached through an adequate adversarial process."
Ramirez, 2017 WL 3670794, at *3.  Thus, the court finds these
factors useful in evaluating a settlement of PAGA claims.  The
third, seventh, and eighth factors, however, are not relevant to
this settlement because it is not a class action and the LWDA has
not participated.  In addition to analyzing the settlement under
the five remaining Hanlon factors, the court must determine
whether the settlement would be unjust, arbitrary and oppressive,
or confiscatory" with respect to defendant, Cal. Lab. Code §
2699(e)(2), and whether "the settlement provisions are at least
as effective as the protections or remedies provided by state and
federal law or regulation for the alleged violation," Cal. Lab.
Code § 2699.3(b)(4).

        First, there is no indication that the settlement would
be unjust, arbitrary and oppressive, or confiscatory as to
defendants.  Throughout the negotiations and in the resulting
settlement, the parties took into consideration defendants' weak
financial condition and ensured that the payment terms were
structured so that defendants would not have to file for
bankruptcy.  Plaintiffs' counsel, who has reviewed defendants'
financial records, reveals that defendants owe several hundred

thousand dollars in federal and state taxes and penalties,
defendants' real property is subject to tax liens, and private
parties have obtained judgments against defendants of more than
$500,000.  (See Rice Settlement Decl. ¶ 11.)  To accommodate
these circumstances, the parties have substantially delayed full
payment.  (See id.)  Where plaintiffs have undertaken such steps
to account for defendants' financial situation and avoid the
further expense of litigation, the court concludes that a
settlement would not be unjust, arbitrary and oppressive, or
confiscatory.  See Ramirez, 2017 WL 3670794, at *4 (reaching a
similar conclusion).

          Second, "the strength of plaintiff's case" factor also
favors approval of the settlement.  Because the parties reached a
settlement prior to an order on the merits, this court has not
yet evaluated the merits of the settling plaintiffs' case.  Now
the court believes that plaintiffs have colorable claims on the
merits.  While defendants dispute the scope of their liability,
they admit that they did not compensate many of its workers for
transportation time in violation of California law.  (See Rice
Settlement Decl. ¶ 7.)  Further, plaintiffs' counsel has
undertaken significant efforts to investigate plaintiffs' claims
and estimate the total liability for defendants' PAGA violations.
(See id. ¶ 9.)

          Third, "the risk, expense, complexity, and likely
duration of further litigation" factor strongly favors approval
of the settlement.  The parties reached this settlement early in
the litigation.  Further litigation would necessitate further
expenses and costs for both parties.  Given defendants' weak

financial condition, continuing litigation would reduce the
amount available for settlement and jeopardize defendants'
ability to satisfy final judgment.  Where a settlement "provides
timely, certain, and meaningful recovery" and ensures that there
are resources available for monetary recovery and injunctive
relief, it ought to be favored.  Ramirez, 2017 WL 3670794, at *5.

Fourth, the settlement allocates $350,000 of the gross
amount as the PAGA allocation.  Of the $350,000, $313,943.17 is
directed payable to other aggrieved employees for underpaid
wages.[4]  See Cal. Lab. Code § 558(a)(3) (requiring that wages
recovered for an underpaid employee be paid to that employee);
see also Cal. Lab. Code § 1197.1(a)(3) (requiring that wages
recovered for an employee paid less than the minimum wage be paid
to that employee).  The other $36,056.73 will be collected as
civil penalties with 75% payable to the LWDA and 25% payable to
the aggrieved employees.  See Cal. Lab. Code § 2699(i) ("[C]ivil
penalties recovered by aggrieved employees shall be distributed
as follows: 75 percent to the Labor and Workforce Development
Agency . . . and 25 percent to the aggrieved employees.").
Plaintiffs' counsel estimates the total potential liability for
underpaid wages and civil penalties at $5.6 million.  (See Rice
Settlement Decl. ¶ 9.)  Even though the settlement requires

---

[4]     The parties' proposed distribution scheme provides
appropriate notice to the other aggrieved employees of their pro
rata share of the settlement and fairly allocates distribution of
any potential unclaimed amounts.  Accordingly, the court approves
of the distribution plan.  See also Rincon v. W. Coast Tomato
Growers, LLC, No. 13-CV-2473-JLS (KSC), 2018 WL 828104, at *2-4
(S.D. Cal. Feb. 12, 2018) (approving of a similar distribution
plan.

defendants to pay only little more than 6% of the estimated value
of plaintiffs' PAGA claims, this amount is still significant and
represents plaintiffs' best chance at any recovery.  Further, the
addition of injunctive relief ensures that defendants comply with
relevant law going forward.  Accordingly, "the amount offered in
settlement" factor favors approval.[5]

        Fifth, regarding the extent of discovery completed and
the stage of the proceedings, this lawsuit settled relatively
early in the process.  As mentioned previously, however,
plaintiffs' counsel conducted an extensive review of the
evidence, took three depositions, and was preparing to file a
motion for summary judgment.  (See Mem. in Supp. of Joint Mot.
for Approval of Settlement and Entry of Stipulated J. at 8.)
Both sides also took part in extensive settlement discussions
before a magistrate judge, thereby developing a good sense of the
risks and benefits of continuing litigation.  See Ontiveros, 303
F.R.D. at 371.  Accordingly, this factor also weighs in favor of
approval.

        Sixth, with respect to the experience and views of
counsel, plaintiffs' counsel has significant experience with PAGA
actions.  Specifically, Ms. Rice maintains that she has "over 30
years of experience as a labor and employment rights litigator"

---

        [5]    To the extent the settlement increases the total
judgment based on missed payments or an improvement in
defendants' financial circumstances, the court finds that such a
modification is reasonable given that the ceiling of $1,000,000
still falls far short of the total estimated value of plaintiffs'
PAGA claims.  Moreover, the court retains jurisdiction of this
action to ensure compliance and can always modify this order
given changed circumstances.

and "regularly provide[s] training on the use of PAGA to obtain workforce wide relief." (See Rice Settlement Decl. ¶ 14.) Thus, counsel's conclusion that this settlement is plaintiffs' best chance at recovery is given considerable weight. Accordingly, this factor weighs in favor of approval.

Seventh, and finally, this settlement is "at least as effective as the protections or remedies provided by state and federal law or regulation for the alleged violation." See Cal. Lab. Code § 2699.3(b)(4). As mentioned previously, this settlement provides for significant injunctive relief. The injunctive relief mandates that defendants comply with relevant law related to compensable time, overtime pay, business expenses, meal and rest breaks, recordkeeping, visa and travel costs, water and sanitation, and kickbacks. The injunctive relief effectuates one of PAGA's main purposes by providing a mechanism for enforcing employees' rights under state and federal law. By combining monetary and injunctive relief, the settlement ensures that employees are compensated for past harms and that the employers are deterred from committing future violations. The court, therefore, finds that the settlement satisfies this provision of the California Labor Code.

Accordingly, because every relevant factor favors final approval of the settlement, the court approves of the parties' settlement of plaintiffs' PAGA claims.

C.    Attorneys' Fees

Both FLSA and PAGA provide for the recovery of attorneys' fees and costs in any successful action. See 29 U.S.C. § 216(b) ("The court in such action shall, in addition to

14

any judgment awarded to the plaintiff or plaintiffs, allow a

reasonable attorney's fee to be paid by the defendant, and costs

of the action."); Cal. Lab. Code § 2699(g)(1) ("Any employee who

prevails in any action shall be entitled to an award of

reasonable attorney's fees and costs.").  Neither statute,

however, provides a standard for evaluating attorneys' fees

related to a settlement.  Nevertheless, attorneys' fees under

both statutes are typically calculated using the lodestar method.

See Kerzich v. Cty. of Tuolumne, 335 F. Supp. 3d 1179, 1185 (E.D.

Cal. 2018) (Drozd, J.) (FLSA); Ramirez, 2017 WL 3670794, at *6

(PAGA).  "The lodestar figure is calculated by multiplying the

number of hours the prevailing party reasonably expended on the

litigation (as supported by adequate documentation) by a

reasonable hourly rate for the region and for the experience of

the lawyer."  In re Bluetooth Headset Prod. Liab. Litig., 654

F.3d 935, 941 (9th Cir. 2011) (citing Staton v. Boeing Co., 327

F.3d 938, 965 (9th Cir. 2003)).  "Lodestar amounts are presumed

to be reasonable" and parties may of course "agree to a []

reduction in attorneys' fees in settlement of a claim."  Kerzich,

335 F. Supp. 3d at 1186 (citations omitted).

        Using the lodestar method, plaintiffs report a total

amount of $344,907.50 for the work of four attorneys.  (See Rice

Settlement Decl. ¶ 13 ($66,557.50 for her own work at a rate of

$650 per hour); Decl. of Laura Clauson Ferree ¶¶ 5-6 ($155,650

for her own work at a rate of $550 per hour and $59,700 for the

work of Javier Castro at a rate of $300 per hour) (Docket No. 86-

10); Botts Decl. ¶ 4 ($63,000 for his own work at a rate of $450

per hour).)  The proposed settlement provides for recovery of

attorneys' fees and costs only in the amount of $40,630.25, a

little over 8% of the total settlement award and a little under

12% of counsel's estimated total lodestar.  Given that the

attorneys' fees award is substantially less than what would they

could recover under their estimated lodestar[6] and does not

represent a substantial portion of the overall settlement, the

court finds the requested fees to be reasonable.

Accordingly, the court approves of plaintiffs' request

for attorneys' fees.

Concurrent with the filing of this memorandum, the

court will sign and enter the stipulated judgment (Docket No. 91)

with minor modifications.

IT IS SO ORDERED.

Dated:  January 24, 2019

_____

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[6]     The court observes that counsel's requested rates are
higher than what is usually permitted in the Sacramento division
of the Eastern District.  See Ontiveros, 303 F.R.D. at 374
(deciding that $400 per hour and $175 per hour were appropriate
for very experienced attorneys and associates respectively).
Nevertheless, the court finds that conducting a lodestar "cross
check" is unnecessary because counsel will recover only 12% of
their estimated lodestar.